**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| LAS VEGAS SANDS CORP., a Nevada corporation, | Case No. 2:15-cv-00990-GMN-VCF |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | MOTION FOR DEFAULT JUDGMENT (ECF NO. 15) |
| MARTIN MIR, an individual, | |
| Defendant. | |

This matter involves Plaintiff Las Vegas Sands Corp.'s ("Sands") civil action against Defendant Martin Mir (ECF No. 1). Before the court is Sands' motion for default judgment (ECF No. 15). For the reasons stated below, Sands' motion should be granted.

## I.   BACKGROUND

Sands is a world famous Fortune 500 company that is publically traded on the New York Stock Exchange. (Compl. (ECF No. 1) at ¶ 8). It is a leading global developer of destination resort properties that feature premium accommodations, world-class gaming and entertainment, convention and exhibition facilities, celebrity chef restaurants, and many other amenities. (*Id.*) Sands' properties include The Venetian, The Palazzo, and The Sands Expo and Convention Center in Las Vegas, Nevada; Sands Bethlehem in Bethlehem, Pennsylvania; and Marina Bay Sands in Singapore. (*Id.*) Through its 70.2% ownership of Sands China, Ltd., Sands also owns and operates The Venetian Macao, Sands Macao, Four Seasons Hotel Macao, and Sands Cotai Central in Macao. (*Id.*)

Sands owns trademark registrations for the VENETIAN trademark (the "Venetian mark") worldwide. (*Id.* at ¶ 11-12). Sands maintains websites at www.venetian.com and www.venetianmacao.com through which it, among other things, provides information and accepts hotel room reservations. (*Id.* at ¶ 9-10).

Martin Mir is the registered owner of the domain names www.venetian-lasvegas.com and www.thevenetian-macau.com ("the domain names"), maintained through Ascio Technologies, Inc. based in Denmark. (*Id.* at ¶ 15). Mir registered the domain names without the knowledge or consent of Sands. (*Id.*) He uses the domain names in connection with websites that purport to allow visitors to compare hotel rates for rooms in Las Vegas and Macao. (*Id.* at ¶ 16).

The venetian-lasvegas.com site states it is the official Vegas promotion booking site. (*Id.* at ¶ 17). It contains the following welcome message:

> Welcome to The Venetian Casino Hotel & Resort! A luxury hotel and casino resort situated on the east side of the Las Vegas Strip, the hotel tower contains 40 stories and rises 475 feet (145 m). The Venetian Resort has its own canal where guests can take gondola rides among streets lined with various shops and live performers. The Venetian is owned and operated by the Las Vegas Sands Corporation. (*Id.* at ¶ 18).

At the bottom of the home page of the website is a link labeled disclaimer in small font. (*Id.* at ¶ 19). When a user clicks on the link another webpage is opened stating the website is not affiliated with The Venetian Hotels & Resorts or Sands Hotels & Resorts. (*Id.*) The thevenetian-macau.com site contains a nearly identical welcome message and disclaimer link. (*Id.* at ¶ 21-22).

On May 29, 2015, Sands commenced this action alleging Mir violated trademark rights by maintaining websites under the domain names. (ECF No. 1). However, Mir has failed to answer or

otherwise defend against Sands' claims. On September 11, 2015, the Clerk of the Court entered default against Mir. (ECF No. 14). Now, Sands moves for default judgment. (ECF No. 15).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs default judgment. It states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). After the Clerk of Court enters a default, the plaintiff must petition the court to obtain a default judgment. FED. R. CIV. P. 55(b)(2). Before considering whether default judgment should be entered, the court has an affirmative duty to ensure that it has personal jurisdiction over the defaulted defendant and subject-matter jurisdiction over the plaintiff's action. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A judgment without jurisdiction is void. *Id.* (citations omitted). If jurisdiction exists, the court's decision to enter default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Televideo Video Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment.").[1] Generally, the court accepts the factual allegations in the plaintiff's complaint as true but requires the plaintiff to prove damages. *Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

The Ninth Circuit has adopted seven factors courts may consider when adjudicating a motion for default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citing 6 MOORE'S FEDERAL PRACTICE ¶ 55-05[2], at 55-24 to 55-26). The factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of

---

[1] Federal Rule of Civil Procedure 54(c) limits the court's discretion in one respect. It states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72 (applying four of the seven factors).

### III.  DISCUSSION

Under Rule 55, the court must engage in three inquiries when recommending default judgment against Mir: (1) whether the court has jurisdiction and can enter default judgment; (2) whether the court should enter default judgment (i.e., do the *Eitel* factors favor Sands?); and (3) whether Sands has proven damages. Each inquiry is addressed below.

### I.  Whether Jurisdiction Exists

The court's analysis of Sands' motion begins with jurisdiction. *In re Tuli*, 172 F.3d at 712. When examining a motion for default judgment, the court has an affirmative duty to ensure that it has personal jurisdiction over the defaulted defendant and subject-matter jurisdiction over the plaintiff's action. *Id*. Generally, jurisdictional allegations must be plausible. *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014) cert. denied, 14-119, 2014 WL 3817554 (U.S. Oct. 14, 2014). However, on a motion for default judgment, the court accepts the plaintiff's allegations as true. *Heidenthal*, 826 F.2d at 917–18. As discussed below, the court finds it has subject-matter jurisdiction over Sands' action and personal jurisdiction over Mir.

#### a.  Subject Matter Jurisdiction

First, the court considers whether it has subject matter jurisdiction over Sands' action. Under 28 U.S.C. § 1331, the court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Sands' complaint alleges violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.* (Compl. (ECF No. 1) at ¶ 2-3, 26-48). Additionally, the Lanham Act "grants the federal district courts original jurisdiction over all actions arising under it." 15 U.S.C. § 1121(a). The Lanham Act is a

1 law of the United States and gives federal district courts jurisdiction. The court finds subject matter
2 jurisdiction exists under 15 U.S.C. § 1051 *et seq.*

### b. **Personal Jurisdiction**

Next, the court considers whether it has personal jurisdiction over Mir. A federal district court may only exercise speficifc personal jurisdiction over a defendant if two requirements are met. *Sec. & Exch. Comm'n v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (citation omitted). First, the court must have a basis for asserting jurisdiction. *Id*. That is, the plaintiff must satisfy the minimum-contacts test. *Id*. Second, the plaintiff must perfect the mechanism for asserting jurisdiction. *Id*. That is, the plaintiff must properly serve the defendant under Rule 4. *Id*.

Sands has satisfied both requirements. With regard to the court's basis for asserting personal jurisdiction, the court may exercise jurisdiction over a nonresident defendant if the following three requirements are met: (1) the defendant must have purposefully directed activities at a resident in the forum, (2) the plaintiff's claim arises from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002).

If a non-resident defendant intentionally harms a forum resident, then the first prong of the court's jurisdictional inquiry is satisfied. *Mavrix Photo, Inc. v. Brand Technologies, Inc.,* 647 F.3d 1218, 1229 (9th Cir.2011)). In *Mavrix Photo,* the defendant's use of the plaintiff's copyrighted photos "as part of its exploitation of the [forum state's] market for its own commercial gain" justified the exercise of jurisdiction over the defendant. *Id*.

The plaintiff bears the burden on the first two prongs. *Best Odds Corp. v. iBus Media Ltd.*, No. 2:13-CV-02008-RCJ, 2014 WL 2527145, at *2 (D. Nev. June 4, 2014). If the plaintiff establishes both prongs one and two, the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable. *Id.*

Here, the court has personal jurisdiction over Mir.  Mir intentionally uses Sands' Venetian mark in the domain names because the disclaimer states the name Venetian is trademarked and therefore the first prong is satisfied.  *Mavrix* 647 F. 3d at 1229.  Mir uses Sands' trademarked names to exploit Nevada's market for his own commercial gain.  *Id.*  Each of Sands' claims are derived from the same common nucleus of operative facts: Mir's misappropriation of Sands' Venetian mark.  Sands's claims arise from the defendant's forum related activies and therefore the second prong is satisfied.  *Burger King*, 471 U.S. at 472.  The burden now shifts to Mir to come forward with a compelling case as to why the exercise of jurisdiction would not be reasonable.  He has not and therefore the third prong is satisfied.

In addition to satisfying the minimum-contacts test, Sands properly served Mir under FRCP 4.  Mir was served in accordance with a court order permitting Sands to serve Mir by email.  (ECF No. 11-12).  Therefore, the court finds that personal jurisdiction exists over Mir.

**II.     Whether the Eitel Factors Favor Default Judgment**

Because the court's jurisdictional requirements are satisfied, the court proceeds to the second question: whether the court should enter default judgment under *Eitel*.  This decision is discretionary and informed by seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits.  *Eitel*, 782 F.2d at 1471–72; *Aldabe*, 616 F.2d at 1092.  Each is addressed below.

**a.     The First Factor – The Possibility of Prejudice to Sands**

The first factor favors entering default judgment.  Mir was properly served in this action and is therefore aware of his infringing conduct.  (ECF No. 12).  Mir has not answered or otherwise defended against Sands' claims and a default has been entered.  (ECF No. 14).  Mir's failure to answer or defend against Sands' claims is prejudicial to Sands because its claims cannot otherwise be resolved on the merits

absent Mir's participation. Sands will effectively be denied relief if not granted a default judgment. *PepsiCo, Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiff's motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). The first *Eitel* factor weighs in favor of an entry of default judgment.

### b. The Second and Third Factors – The Merits of Sands' Substantive Claims and the Sufficiency of the Complaint

The second and third factors favor entering default judgment. To warrant default judgment, the complaint's allegations must be sufficient to state a claim upon which relief can be granted. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Sands' complaint satisfies this standard because its claims "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

Sands complaint states six claims for relief that derive from the same nucleus of operative facts: Mir's misappropriation of Sands' Venetian mark. The complaint alleges: (1) cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d); (2) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (3) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (4) trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c); (5) common law trademark and trade name infringement; and (6) common law unfair competition.

### i. The First Claim – Cybersquatting under the Lanham Act

To prevail on the first claim, Sands must demonstrate Mir had a bad faith intent to profit from Sands' trademark and he registered, trafficked in, or used a domain name that is identical to, confusingly similar to, or dilutive of Sands' distinctive or famous trademark. 15 U.S.C. § 1125(d).

Sands' complaint satisfies these elements. Sands alleges Mir's conduct is willful and indicative of a cybersquatting pattern. (Compl. (ECF No. 1) at ¶ 24). Mir has registered many other domain names containing the trademarks of other famous hotels in Las Vegas. (*Id.*) Mir has also been a defendants in

two World Intellectual Property Organization cases in which he was ordered to transfer ownership of domain names that contained trademarks for the Westin Hotel (WIPO Case No. D2013-18-06) and the Hyatt International (WIPO Case No. D2012-1803). (*Id.* at ¶ 25). Because the court accepts these allegations as true, *Heidenthal,* 826 F.2d at 917-918, Sands has plausibly alleged Mir had a bad faith intent to profit from the Venetian mark.

Sands alleges that Mir is using a confusingly similar name, the Venetian mark, in his domain names and on the websites. The motion for default judgment contains images from Mir's websites showing his use of the Venetian mark. (Mtn for Default Jgmnt. (ECF No. 15) at 8:19 and 10:17). The domain names include Sands' Venetian mark and the geographical location of the Venetian hotels. Sands has plausibly alleged Mir's use of a confusingly similar mark.

Sands alleges they began using the Venetian mark in 1997. (Compl. (ECF No. 1) at ¶ 12). Mir registered the domain names on January 8, 2012. (*Id.* at ¶ 12). Sands' Venetian mark has "become distinctive and famous in the United States for … resort hotel and casino services." (*Id.* at ¶ 14). Accepting these allegations as true, *Heidenthal,* 826 F.2d at 917-918, Sands has plausibly alleged the Venetian mark was distinctive and/or famous when Mir registered the domain names. (*Id.* at ¶ 29).

### ii. The Second and Sixth Claims – Trademark Infringement Under the Lanham Act and Common Law Unfair Competition

To prevail on the second and sixth claims – trademark infringement under the Lanham Act and common law unfair competition – Sands must demonstrate the same elements. *Carpet Cops, Inc. v. Carpet Cops, LLC*, No. 3:11-CV-00561-RCJ, 2012 WL 3929783, at *5 (D. Nev. Sept. 6, 2012). Sands must demonstrate ownership of a valid, protectable mark and that the alleged infringer is using a confusingly similar mark. *Herb Reed Enterprises, LLC v. Florida Ent'mt Mgm't, Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013).

Sands' complaint satisfies these elements. Sands alleges the ownership of valid and protectable federally registered trademarks, including the Venetian mark, for use in connection with, among other services, casino and gaming services. (Compl. (ECF No. 1) at ¶ 12). "Federal registration of a trademark constitutes *prima facie* evidence of the validity of the registered mark and of [the registrant's] exclusive right to use that mark in commerce." *Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006). Sands' has plausibly alleged ownership of a valid and protectable trademark.

As discussed above, Sands has plausibly alleged Mir's use of a confusingly similar mark.

### iii. The Third and Fifth Claims – Unfair Competition Under the Lanham Act and Common Law Trademark Infringement

To prevail on the third and fifth claims—unfair competition under the Lanham Act and common law trademark infringement—Sands must demonstrate the same elements. *Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1193 (D. Nev. 2003) (citations omitted). Sands must show Mir "used in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another, or as to the origin, sponsorship, or approval of its goods by another person." 15 U.S.C. § 1125(a).

Sands' complaint satisfies these elements. Screenshots of the websites show Mir included Sands' Venetian mark in his domain names and on his websites, which are used to mislead consumers into believing the websites are owned, affiliated with, sponsored by, or approved by Sands or the Venetian properties. (Mtn for Default Jgmnt. (ECF No. 15) at 8:19 and 10:17). Mir included an official designation on the websites and a welcome note beginning, "Welcome to The Venetian Casino Hotel & Resort!" and "Welcome to the Venetian Macau Casino Hotel & Resort…." (Compl. (ECF No. 1) at ¶ 18-19, 21-22). Sands was unaware and did not approve of Mir's misappropriation of its Venetian mark. (*Id.* at ¶ 23).

### iv. The Fourth Claim - Trademark Dilution Under the Lanham Act

To prevail on the fourth claim – trademark dilution under the Lanham Act – Sands must demonstrate Mir is making use of the famous and distinctive trademark in commerce after the trademark became famous and Mir's use of the mark is likely to cause dilution by blurring or tarnishment. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir.2008). Dilution occurs when "a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Playboy Enterprises Int'l, Inc. v. Muller*, 314 F. Supp. 2d 1037, 1042-43 (D. Nev. 2004). Dilution "indisputably occurs when a famous trademark is used in commerce without authorization on goods in competition with those of the famous trademark holder." *Id.*

Sands' complaint satisfies these elements. As discussed above, Sands has plausibly alleged Mir's use of a famous and distinctive trademark after the trademark became famous.

Sands alleges Mir's websites claim to be official booking sites, in competition with Sands' websites. (Compl. (ECF No. 1) at ¶ 17, 20). Mir registered the domain names without the knowledge or consent of Sands. (Compl. (ECF No. 1) at ¶ 15). Accepting these allegations as true, *Heidenthal,* 826 F.2d at 917-918, Sands has plausibly alleged Mir's website is likely to cause dilution.

### c. Fourth Factor – The Sum of Money at Stake in the Action

The fourth factor favors entering default judgment. The fourth factor considers "the amount of money at stake in relation to the seriousness of [the] Defendants' conduct." *PepsiCo, Inc.*, 725 F. Supp. 2d at 921 (N.C. Cal. 2010). Plaintiffs in cybersquatting cases may be awarded a statutory damage amount of "not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). The court has wide discretion in tailoring monetary damages to the alleged harm. *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990).

1   Sands seeks statutory damages under section 1117(d).  The sum of money at stake in the action is
2 appropriate to the seriousness of Mir's conduct.  The fourth *Eitel* factor weighs in favor of an entry of
3 default judgment.

### d. Fifth Factor – The Possibility of a Dispute Concerning Material Facts

The fifth factor favors entering default judgment.  The fifth factor considers the possibility of a dispute regarding any material facts in the case.  *PepsiCo, Inc.*, 725 F. Supp. 2d at 1177.  "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.*

Given the sufficiency of Sands' complaint in alleging the facts necessary to establish its claims for relief, and Mir's subsequent failure to answer, no dispute has been raised regarding material elements in the complaint.  It is unlikely any such dispute will arise.  The fifth *Eitel* factor weighs in favor of an entry of default judgment.

### e. Sixth and Seventh Factor – Whether Default Was Due to Excusable Neglect and the Strong Policy Favoring Decisions on the Merit

The sixth and seventh factors favor entering default judgment.  The sixth factor considers whether the defendant's default was the product of excusable neglect.  *Eitel,* 782 F.2d at 1471-72.  This factor favors default judgment where, as here, the defendant has been properly served.  *Landstar Range, Inc. v. Parth Enterprises, Inc.,* 725 F.Supp.2d 916, 922 (C.D. Cali 2010).

The seventh factor considers the strong policy under Federal Rule of Civil Procedure 55 that "cases should be decided on their merits whenever reasonably possible."  The mere existence of Rule 55(b), however, indicates this preference, standing alone, is not dispositive.  *Eitel*, 782 F.2d at 1472; *PepsiCo, Inc.,* 238 F.Supp.2d at 1177.  Where a defendant fails to respond to a complaint, a judgment on the merits is "impractical, if not impossible." *Id.*

Sands properly served Mir.  There is no evidence before the court that Mir's failure to respond is due to excusable neglect.  *United States v. High Country Broad, Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993)

(per curiam) (holding it was appropriate for the district court to enter default judgment against a corporation that failed to appear in the action through licensed counsel). Mir's failure to respond renders a decision on the merits impractical, if not impossible. *PepsiCo, Inc.,* 238 F.Supp.2d at 1177. The sixth and seventh *Eitel* factors weigh in favor of an entry of default judgment. Therefore, Sands' motion for default judgment should be granted.

### III. Whether Sands Has Proven Damages

Having determined that default judgment should be entered, one issue remains: whether Sands has proven damages and entitlement to injunctive relief.

#### a. Sands' Request for Monetary Damages

"Statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008). "Statutory damages may be imposed even for uninjurious and unprofitable invasions because one of the goals in imposing statutory damages is deterrence." *Hakkasan LV, LLC v. Miller*, No. 215CV00290JADPAL, 2016 WL 1064473, at *3 (D. Nev. Mar. 17, 2016) (internal quotations emitted).

In *Hakkasan*, the court found the maximum statutory damages under the Lanham Act was not justified because the only thing known about the defendant was he had internet connection and refused to participate in litigation. *Hakkasan,* 2016 WL 1064473, at *3 (D. Nev. Mar. 17, 2016). The plaintiff argued the defendant's conduct was willful because it continued after plaintiff's attorney explained over a phone call the consequences of his action and sent two demand letters. *Id.* The court found the defendant's conduct justified the minimum amount of statutory damages. *Id.*

Sands argues that the maximum statutory damages are appropriate because Mir's conduct was egregious and persisted after being properly served.[2] (Mtn for Default Jgmnt. (ECF No. 15) at 21:26 -

---

[2] Sands seeks $100,000 for each domain name.

22:11). Sands argues this amount is necessary to deter similar illegal conduct.  The record establishes that Mir has internet connection and refuses to participate in litigation.  *Hakkasan,* 2016 WL 1064473, at *3.  He has registered many other domain names containing trademarks of other famous, Las Vegas hotels.  Mir has lost two WIPO cases against the Westin Hotel and the Hyatt International.  However, Sands did not justify imposition of the maximum amount of statutory damages against Mir.  Sands has not shown that it attempted to send any demand letters or contact Mir before filing its complaint.  *Id.*  The websites containing the domain names promote the Venetian rather than degrade it.  On the record, Mir's conduct supports imposition of statutory damages totaling $20,000.00[3] under section 1117(d).

### b. Sands' Request for Order

In addition to seeking money damages, Sands requests an order to require Ascio Technologies and Verisign[4] to transfer the registrations for the www.venetian-lasvegas.com and www.thevenetian-macau.com domain names to Sands or, upon Sands' request, to immediately and permanently cancel the registrations.  "In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  15 U.S.C. § 1125.  Therefore, Sands' request for an order to require Ascio Technologies and Verisign to transfer or, upon Sands' request, cancel the registrations should be granted.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Sands' Motion for Default Judgment (EFC No. 15) be GRANTED.

IT IS RECOMMENDED that Sands be awarded DAMAGES in the amount of $20,000.00.

---

[3] $10,000 for each domain name.
[4] Sands alleges that Verisign is the registry for all ".com" domain names.  (Mtn for Default Jgmnt. (ECF No. 15) at 25:5).  Because Ascio Technologies is located in Denmark and may not honor this court's order, Sands requests Verisign also be required to transfer or cancel the registrations for the domain names.

IT IS RECOMMENDED that Ascio Technologies, Inc. and Verisign, Inc. be required "to permanently transfer the registrations for the www.venetian-lasvegas.com and www.thevenetian-macau.com domain names to Las Vegas Sands, or, upon Las Vegas Sands' request, to immediately and permanently cancel the registrations for the … domain names …." (ECF No. 15 at 26:6-10).

IT IS FURTHER RECOMMENDED that FINAL JUDGMENT be entered against Mir.

IT IS SO RECOMMENDED.

**NOTICE**

Pursuant to Local Rules IB 3-1 and IB 3-2, a party may object to orders and reports and recommendations issued by the magistrate judge. Objections must be in writing and filed with the Clerk of the Court within fourteen days. LR IB 3-1, 3-2. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist*., 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 21st day of June, 2016.

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE